UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

NATHANIEL JORDAN,      )
             )
        Movant,      )
             )
     v.          )     **Cause No. 2:12CV529-PPS**
             )     **Arising from 2:09CR32-PPS**
UNITED STATES OF AMERICA,  )
             )
      Respondent.    )

## OPINION AND ORDER

A package shipped by UPS from Canada to a residence in Gary, Indiana contained children's clothing and two stuffed snowmen toys in which bundles of heroin had been inserted. After Customs agents inspected the package and discovered the drugs, a controlled delivery was arranged to the Gary residence, and the recipients of the package were indicted. A jury found defendant Nathaniel Jordan guilty of attempted possession of heroin with intent to distribute, and Jordan was sentenced to a prison term of 120 months.

After an unsuccessful appeal to the Seventh Circuit Court of Appeals, Jordan is again before this court with a *pro se* motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. §2255. Section 2255 authorizes the district court to grant relief to a federal criminal defendant who can show that his conviction or sentence violated federal law or the U.S. Constitution. Jordan presents nine grounds for relief.

### Ground One: Ineffective Assistance of Counsel & Entrapment Defense

Jordan contends this his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by refusing to pursue an entrapment defense. Jordan argues that his counsel should have attempted an entrapment defense because his son-in-law Sam (the shipper of the

package) worked with the government "to induce drugs into the possession of defendant Jordan." [DE 174 at 4.] Jordan professes his innocence and disputes the accuracy of the incriminating evidence used to convict him.  An entrapment defense requires proof that the government induced the crime and that the defendant was not predisposed to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63 (1988).

To obtain relief on an ineffective assistance claim, Jordan must demonstrate both that his counsel's performance was deficient and that the deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The standards are high.  Constitutionally deficient performance means failures that "fell below an objective standard of reasonableness under prevailing professional norms."  *Griffin v. Pierce*, 622 F.3d 831, 843 (7th Cir. 2010) (citing *Strickland*, 466 U.S. at 688-93).  *Strickland*'s performance prong carries a strong presumption that counsel's conduct was reasonable and that the "challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.  When evaluating an attorney's performance under the *Strickland* standard, "courts must defer to any strategic decision the lawyer made that falls within the 'wide range of reasonable professional assistance,' even if that strategy was ultimately unsuccessful."  *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013) (quoting *Strickland*. 466 U.S. at 689).  Prejudice under *Strickland* requires a reasonable probability that absent the unprofessional errors of the attorney, Jordan would have been acquitted.  *Strickland*, 466 U.S. at 694.

Immigration Customs Enforcement Agent Robert Nicodemus testified that after the controlled delivery of the package containing the heroin, Jordan gave an interview in which he acknowledged a history of trafficking in heroin.  [DE 114 at 85.] In the statement taken from

Jordan at that time, Jordan also acknowledged understanding that drugs were being shipped to

him to be resold, with Jordan to receive one-third of the profits.  [*Id.* at 86-88.]  Jordan testified

at trial.  On the stand, Jordan acknowledged that he had a prior conviction for selling heroin

provided to him by his son-in-law Sam. [DE 112 at 117-18.]  The jury also heard Jordan's

disclaimer of any knowledge that heroin would be in this package arranged via Sam and any

involvement in a plan to sell the drugs. [*Id.* at 119-20, 123, 126-27, 138, 143-46.] Jordan's

conviction evidently reflects which testimony was believed.

Whether or not to pursue a particular line of defense is a classic example of legal strategy,

and the Supreme Court itself has observed that "strategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable."

*Strickland*, 466 U.S. at 690.  Where his client had previously been involved in drug trafficking

with the same supplier of heroin in this case, both elements of an entrapment defense – a lack of

predisposition and government inducement – would have been a tough sell to the jury.  Counsel's

decision not to attempt an entrapment defense was eminently reasonable on the facts and

evidence he knew were to be adduced against Jordan.

No new or additional facts or evidence are now offered by Jordan that could have been

used to change the trial landscape to make entrapment a more reasonable option, much less one

that it was downright unprofessional for counsel to have overlooked.  Furthermore, with the

evidence as it was, there is no reasonable probability that an entrapment defense would have

resulted in Jordan's acquittal.

To the extent Jordan reviews the evidence against him and suggests that trial counsel

should have objected to portions of it [DE 174 at 4-8], Jordan provides no basis for the

3

objections he complains were not made.  This lack, coupled with the strong presumption of strategic competency on the part of counsel, precludes a finding that counsel's performance fell short of reasonable professional standards.  Nor is a likelihood of acquittal demonstrated if the defense had objected.

Neither the deficient performance prong nor the prejudice prong of the *Strickland* standard is met.  Jordan is not entitled to any relief on Ground One.

### Ground Two:  *Anders* Treatment in the Court of Appeals

In Ground Two, Jordan complains that the Seventh Circuit erred in its handling of his direct appeal.  After filing the notice of appeal, Jordan's trial counsel was appointed by the Seventh Circuit to represent Jordan on appeal.  The attorney tendered an *Anders* brief along with a motion to withdraw.

Under the procedure outlined by the Supreme Court in *Anders v. California*, 386 U.S. 738, 744 (1967), an attorney who believes his client has no non-frivolous grounds for appeal can file a brief "referring to anything in the record that might arguably support the appeal" and seek leave to withdraw from the representation.  Thereafter, the defendant/client is furnished an opportunity to raise any issues he wishes to pursue.  *Id.*  If the appellate court "finds any of the legal points arguable on their merits," it must appoint counsel to argue the appeal.  *Id.*  In Jordan's case, the Seventh Circuit considered Jordan's *pro se* response to his attorney's *Anders* brief, granted counsel's motion to withdraw, and dismissed the appeal, but issued a 5-page order addressing some of the issues raised.  *United States v. Jordan*, 420 Fed.Appx. 634 (7th Cir. 2011).

In Ground Two of his §2255 motion, Jordan argues that the Seventh Circuit committed plain error when it dismissed his appeal without appointing him substitute counsel.  More

particularly, Jordan suggests that his trial counsel presented a conflict of interest because he could not (or perhaps would not) pursue issues of his own ineffectiveness. [DE 174 at 9.]  But the Seventh Circuit has explained time and time again that issues of ineffective assistance of counsel "are best brought on collateral review rather than direct appeal."  *United States v. Stokes*, 726 F.3d 880, 897-98 (7th Cir. 2013) (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). Furthermore, Jordan doesn't demonstrate how the Seventh Circuit's procedure departed from or fell short of what the Supreme Court prescribed in *Anders*.

In any event, no error *by the Court of Appeals* can possibly support relief from the district court on a §2255 motion.  It goes without saying that this trial court does not give appellate-type review to the actions of the Court of Appeals that sits above it.  With respect to the purpose of §2255 motions in particular, nothing that occurred in the appellate court could be said to *result in* Jordan's conviction or sentence being in violation of federal law, given that events in the Seventh Circuit occur after the fact of the conviction and sentence, and a court away from the trial court in which the conviction and sentencing take place.  No relief will be granted on Ground Two.

**Grounds Three and Nine:  Indictment of One Charge; Conviction of Another**

In Grounds Three and Nine of his motion, Jordan attempts an argument that he was indicted for an attempted possession offense but convicted of (and sentenced for) actual possession.  The operative charge was Count 1 of the superseding indictment which alleged that Jordan and his co-defendant Scott Adkins "did knowingly and intentionally attempt to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin," citing 21 U.S.C. §841(a)(1). [DE 19 at 1.]  This charge omitted a reference to 21 U.S.C. §846, the statutory section providing that an attempt is subject to the same penalties as

5

the underlying substantive offense.  The judgment ultimately entered in the case indicates that Jordan was convicted of possession with intent to distribute heroin, rather than *attempted* possession with intent to distribute.  [DE 101 at 1.]

Neither of these omissions supports a claim that Jordan's conviction or sentence violated federal law.  The language of the indictment clearly charges an attempt, whether or not §846 was cited.  The jury was correctly instructed in Instruction No. 9 that the charge was an attempt [DE 75 at 10, 22] and in Instruction No. 23 what the definition of "attempt" is [*id.* at 24].  So there is no reason to question whether the jury understood the charge and the elements of the offense. The omission in the judgment is merely a clerical error that can be corrected at any time. Fed.R.Crim.P. 36.  Now that the error has been brought to my attention, I will enter an amended judgment to reflect that Jordan's conviction was for attempted possession with the intent to distribute, rather than the substantive offense.  But none of this makes any substantive difference to Jordan's punishment, given that §846 provides that an attempt is punished in the same manner as the completed offense.

What's more, as the government notes, this issue is one that was addressed by the Seventh Circuit on Jordan's appeal.  The Court of Appeals rejected the argument as frivolous, finding the omission of §846 from the indictment and the omission of "attempted" from the judgment to be of no consequence where "the record shows unequivocally that Jordan knew he was defending against a charge of attempt rather than a charge of actual possession."  *Jordan*, 420 Fed.Appx. at 638.  Jordan was charged with an attempt and the jury found him guilty of that offense. There is no basis for granting relief on Ground Three or Ground Nine, both of which essentially make the same argument.

6

**Ground Four:  Warrant for Customs Search & Ineffective Assistance**

Jordan contends in Ground Four that a search warrant was required for the Customs agent to open and inspect the package that contained the heroin.  Jordan also argues that his trial counsel was ineffective for failing to raise this objection to the search.

The Seventh Circuit has already considered and rejected this claim as frivolous.  The court found that the UPS hub in Louisville, where the package was opened, "was the functional equivalent of an international border because it was where the Canadian package first touched American soil."  *Id.*  That being so, no warrant was required:  "A search at an international border need not be supported by a warrant or even by any particularized suspicion."  *Id*.  *See also United States v. Johnson*, 991 F.2d 1287, 1290 (7th Cir. 1993) (customs officials have plenary authority to conduct warrantless searches at the border, including at airports which are the functional equivalent of the national border for passengers and packages arriving internationally).  Jordan's counsel was not ineffective for failing to raise a losing argument, and Jordan suffered no prejudice because it was not raised.  Jordan's Ground Four has no merit.

**Ground Five:  404(b) Evidence**

In Ground Five, Jordan argues that I erred in permitting the government to adduce evidence that Jordan's co-defendant Adkins had traveled to Canada the week before the controlled delivery [DE 112 at 20-21], and that when interviewed at the scene, Adkins admitted that he had "attempted to travel to Canada to obtain heroin from Sam" [*id.* at 24].  As did his trial counsel, Jordan argues that the evidence was subject to treatment under Fed.R.Evid. 404(b), and was improperly admitted.

Ground Five is procedurally defaulted.  Jordan failed to assert this issue on direct appeal, which defeats it now.  "An issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for and actual prejudice resulting from the failure to raise it."  *Mankarious v. United States*, 282 F.3d 940, 943 (7th Cir. 2002).

On its merits, the ground fares no better.  I remain persuaded of the analysis I gave to this issue at trial, when the argument was made by counsel for Adkins.  I persist in the view that the evidence is not evidence of a prior crime, wrong or other bad act that should be analyzed under Rule 404(b).  As I said then: "I think it's evidence directly relevant to the crime that's charged in the indictment.  And it goes to the Defendant's [Adkins'] knowledge and his preparation and his intent, all of which are elements of the crime charged." [DE 113 at 140.] But even if I analyzed the matter under Rule 404(b), I would conclude, as I did previously, that the evidence was not merely adduced for the impermissible purpose of showing propensity, but was pertinent to the permissible issues of knowledge, intent and absence of mistake.  [*Id.* at 140-41.]

Jordan is not entitled to any relief on the basis of Ground Five.

**Ground Six: Evidence of Adkins' Statement Incriminating Jordan**

During co-defendant Adkins' cross-examination of Agent Terrance McCabe about Adkins' interview at the scene, McCabe testified that Adkins "indicated that he was... working with Jordan." [DE 112 at 50-51.] Recognizing the *Bruton*[1] problem arising from such testimony (an incriminating statement from a co-defendant not subject to cross-examination), I intervened at that point and directed counsel to ask another question. [*Id*. at 51.] In his Ground Six, Jordan

---

[1] *Bruton v. United States*, 391 U.S. 123, 126 (1968).

argues that I erred in failing to give a curative instruction and that his attorney's failure to object constituted ineffective assistance of counsel.

The trial transcript reflects that the objectionable reference was literally momentary, and that counsel was immediately directed to (and did) move away from McCabe's uninvited statement. A "curative" instruction would only have highlighted and emphasized an improper but fleeting reference that was better steered away from. Counsel was not ineffective for making that strategic assessment of the situation and not voicing an objection (particularly as I had already reacted to address the situation) and not requesting that the jury be instructed to disregard the statement. Deciding when to object is a matter of trial strategy that a lawyer has to make on the spot. *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir.1995); *United States v. Pedigo*, 12 F.3d 618, 623 (7th Cir.1993).

As the Seventh Circuit has already found:

[T]he agent let this slip while being prodded by Adkins' lawyer on cross-examination, and the district court immediately quieted the agent and told the lawyer to move on to something else. We would find that this minor gaffe was harmless because, in light of the substantial evidence the government presented against Jordan, his conviction "cannot plausibly be traced" to Agent McCabe's stray remark.

*Jordan*, 420 Fed.Appx. at 638-39. The inadvertent problematic testimony was promptly halted and could not reasonably be thought to have substantially influenced the jury's verdict. Neither was counsel ineffective for electing not to underscore the testimony by an unnecessary objection or a request for a curative instruction. No relief will be granted on Ground Six.

9

**Ground Seven – Prosecutorial Misconduct in Closing Argument**

Jordan's seventh ground for relief is his contention that the government was allowed to argue "statements" that were not in evidence in the case.  More specifically, Jordan argues that in closing, the prosecutor argued that Jordan expected to receive drugs in the package mailed to him, that Jordan "claimed to be acting as a middleman" for the sale of the heroin, and that Jordan "told two agents that drugs would be in the package." [DE 174 at 19.]

Considering this argument, the Seventh Circuit said that it "would reject Jordan's assertion that the government committed prosecutorial misconduct during closing argument," because the Court of Appeals found that "the 'improper' statements that Jordan has identified are permissible references to Agent Nicodemus's testimony about Jordan's confession." *Jordan*, 420 Fed.Appx. at 639.  I similarly find Jordan's claims about the government's closing to be without merit.

It is true that the government argued that defendants Jordan and Adkins "knew they were receiving drugs in the mail when they got this package on January 29th of 2009." [DE 116 at 70-71.] But this was certainly a permissible inferential argument to make based on the evidence that Jordan and Adkins had ripped open the snowmen shortly after receiving the shipment. [*Id.* at 71.] Who would do such a thing to a stuffed animal unless one believed there was something worthwhile inside? The prosecutor further referred to Jordan's statement on the day of the delivery to the effect "that he believed he was getting drugs," and "that the talk about the profit led him to believe he was going to be receiving drugs." [*Id.*] This was an entirely permissible argument based on the evidence, adduced through interviewing agent Robert Nicodemus, of Jordan's statement to the agents on the day the package was delivered.  [DE 114 at 86-7.]

10

In his testimony at trial, Jordan acknowledged that he had previously said he was to act as a middleman for the sale of the laptop computers he then claimed to have been expecting in the package. [DE 112 at 145.] The prosecutor echoed this phrase in her closing argument, saying that Jordan "admitted that he knew he was going to act as a middleman." [DE 116 at 26.] Referring to Jordan's receipt of a package known to be coming from a drug dealer, and his expecting to split the profits from the sale of its contents, the prosecutor reasonably and permissibly suggested to the jury that it could infer Jordan's intent to distribute the contents of the package, which he actually knew and expected to be heroin.

Jordan wants to quarrel with the evidence as to the statement he gave at the scene, and quarrel with the inferences that could permissibly be made from the evidence generally. But the jury heard Jordan's testimony at trial and found otherwise, and their conclusion was supported by the evidence. Jordan demonstrates no impropriety in the prosecution's closing argument, which was reasonably predicated on the evidence the jury had heard and did not contain misstatements or mischaracterization of the record. Ground Seven does not support relief.

### Ground Eight – Spoliation of Drug Evidence

The evidence at trial indicated that the contents of the snowman toys had been tested and determined to be heroin, but thereafter a portion of the drugs were prematurely ordered to be destroyed. [DE 113 at 165, 228-229; DE 114 at 156.] In Ground Eight, Jordan contends that the destruction of the drugs undermined his ability to test the drugs independently and constituted a fraud on the court. [DE 174 at 19.] The Court of Appeals has considered and rejected this argument. The Seventh Circuit noted that only the undelivered portion of the drugs was destroyed, that there exists no evidentiary basis for a determination that the destruction was

11

malicious rather than inadvertent, and that whether or not the substance was actual heroin would not impact the conviction or sentence. *Jordan*, 420 Fed.Appx. at 638.

Other than noting the Seventh Circuit's previous rejection of Jordan's argument, the government's response is principally to make the procedural observation that Jordan's references to Rule 60 of the Federal Rules of *Civil* Procedure cannot support relief from his *criminal* conviction. I am more inclined to address the argument head-on, as the Seventh Circuit did.

In *Youngblood v. Arizona,* 488 U.S. 51, 58 (1988), the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Jordan has no support for any assertion that the destruction of some of the heroin was done in bad faith.

And as the Court of Appeals noted, even if the substance in the package was not actually heroin, Jordan was guilty of an attempt to possess heroin with intent to distribute because when he received the package, he attempted to possess what he *believed* to be heroin, and he intended to deliver it to another person. *Jordan*, 420 Fed.Appx. at 638. *See* Instruction No. 21 [DE 75 at 22]. "Neither a conspiracy conviction nor an attempt conviction requires the delivery, presence, or even existence of actual contraband." *United States v. Macias-Valencia*, 510 F.3d 1012, 1016 (9th Cir. 2007). *See also United States v. Burke*, 531 F.3d 883, 886 (5th Cir. 2005) (factual impossibility, which includes possession of fake contraband, does not preclude a conviction for conspiracy or attempt). Ground Eight is without merit.

## Conclusion

Collateral review is different from direct review. "Relief under §2255 'is reserved for extraordinary situations.'" *Hays v. United States*, 397 F.3d 564, 566 (7th Cir. 2005), quoting

*Prewitt v. United States*, 83 F.3d 812, 816 (7ᵗʰ Cir. 1996).  Habeas-type relief is limited to convictions that violate fundamental fairness.  *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).  Nathaniel Jordan was convicted upon substantial evidence that he confessed to accepting a package knowing that it contained heroin for him to sell.  Jordan fails to demonstrate that there was any error or unfairness, much less extraordinary error or fundamental unfairness, in the proceedings.  His motion under §2255 must be denied.

### Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To obtain a certificate of appealability, Jordan must show that reasonable jurists could debate whether his petition should have been resolved differently.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  I find that none of Jordan's grounds present even a debatable basis for relief from his conviction or sentence, and I will deny a certificate of appealability.

ACCORDINGLY:

Nathaniel Jordan's **motion pursuant to 28 U.S.C. §2255 [DE 174]** to vacate, set aside or correct sentence is **GRANTED to the extent that an amended judgment will be entered reflecting that the offense was an attempted possession, but is otherwise DENIED.**

A certificate of appealability is DENIED.

The Clerk shall enter final judgment accordingly.

**SO ORDERED**.

ENTERED: December 13, 2013

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT